**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| David Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| -vs- | ) | |
| | ) | |
| Sheriff of Cook County, Tom Dart, | ) | No. 1:22-cv-06263 |
| Cook County, Illinois, | ) | |
| Correctional Officer Steven Wilensky | ) | *(Judge Wood)* |
| Correctional Officer Mitchell | ) | |
| Inmate Service Director John Mueller, | ) | (Magistrate Judge Cummings) |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'MOTION TO DISMISS THE TAC**

## I. INTRODUCTION

Defendants' Motion to Dismiss ("MTD") seeks to again litigate the Second Amended Complaint ("SAC") by asserting that Mr. Johnson's Third Amended Complaint ("TAC") still depends on denying his 2005 conviction. That is not what the TAC alleges. Though this Court dismissed the SAC because all claims "hinge on Johnson's assertion that he had never been found guilty of a sexual-misconduct offense," is contradicted by the 2005 conviction, this Court expressly granted leave to amend because "*it appears he may have a viable claim based on one or more Defendants' use of that prior conviction as grounds for assigning him a green jumpsuit pursuant to the Policy.*"

The TAC did exactly what the Court invited: it (1) acknowledges the 2005 conviction, TAC ¶¶5, 25–26; (2) alleges Policy 313 was adopted in 2016–17 to deter in-custody misconduct, TAC ¶¶18–24; and (3) challenges Defendants' retroactive use of that old conviction to impose "313 violator" branding on a pretrial detainee in 2021 without any contemporaneous adjudication, TAC ¶¶2, 6–7, 32–37, 44–50.

The Defendants' Motion to Dismiss the TAC has two arguments: (1) That Mr. Johnson's conviction as a sex offender resulted in him being "registered" as a "lifetime sex offender," and that this registration subjects him to any policy changes that occur during any time in his life that could retroactively increase his punishment for the 2005 conviction, even though he served out his sentence; and (2) that the TAC does not plead any personal involvement by any of the individual Defendants, and therefore qualified immunity cannot be overcome. (Def brief, p. 2). Defendants provide no legal support for argument (1) that a new policy can be applied *ex post facto* retroactively to increase punishment for a past conviction with time already served; and argument (2) is based on a false premise because the TAC contains factual allegations throughout about the Defendants' personal involvement and deliberate indifference to causing harm to Mr. Johnson

## <u>ARGUMENT</u>

### A. The TAC States a Plausible Cause of Action for Violation of Procedural Rights

Procedural due process is implicated when government action deprives a person of a protected liberty or property interest. Even when the government acts for a legitimate purpose, it must provide fair procedures—notice and an opportunity to be heard—before imposing the deprivation. In the custodial context, courts first ask whether the challenged condition implicates a liberty interest. Convicted prisoners generally possess limited liberty interests, and routine conditions of confinement do not trigger due process unless they impose an "atypical and significant hardship" beyond ordinary prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Pretrial detainees, however, are categorically different: because they have not been convicted, they may not be subjected to punitive conditions at all. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979).

When jail officials label a detainee as a particular type of offender and impose special restrictions, courts analyze whether the designation creates a protected liberty interest under the "stigma-plus" framework. A liberty interest exists where a stigmatizing label is coupled with a tangible alteration of legal status or a material worsening of conditions. See *Vitek v. Jones*, 445 U.S. 480 (1980); *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997); *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999); *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005). Courts have repeatedly recognized that classifying an inmate or detainee as a sex offender and imposing attendant restrictions constitutes an atypical and significant hardship requiring procedural protections. *Neal*, 131 F.3d at 830.

Defendants contend that, even accepting the TAC's allegations of stigma, punishment, denial of hearings, and lack of meaningful review, no procedural due process violation is stated. They rely primarily on *Kuhn v. Goodlow*, 678 F.3d 552 (7th Cir. 2012), and *Curtis v. Schwartz*, 856 F. App'x 44 (7th Cir. 2021). Neither supports dismissal.

*Kuhn*, decided at summary judgment, stands only for the settled principle that a defendant must have caused or participated in the alleged constitutional deprivation. 678 F.3d at 556. There, the plaintiff failed to establish any causal link between the defendant building inspector and his arrest. Here, by contrast, the TAC alleges direct and knowing participation by each Defendant in imposing and maintaining the green-jumpsuit designation despite the absence of any valid Rule 313 adjudication.

The TAC alleges that Defendant Mitchell insisted Plaintiff was a Rule 313 violator, refused supervisory review, and coerced compliance through threats of OC spray and segregation. Defendant Wilensky acknowledged that the designation was based on a pre-2017 incident, ignored documentary proof of a not-guilty finding, and nonetheless maintained the punishment. Defendant

Mueller told Plaintiff that grievance procedures did not apply to him, taunted him, and upheld the designation despite knowing it lacked a factual or procedural basis. The TAC further alleges that all Defendants failed to intervene to stop the foreseeable harassment and harm flowing from the stigmatizing classification and knowingly acquiesced in its continuation. These allegations easily satisfy *Kuhn*'s causation requirement.

*Curtis* likewise does not help Defendants. That case, also resolved at summary judgment, turned on the absence of evidence linking a challenged classification to unconstitutional motive, where the adverse condition predated the protected conduct. 856 F. App'x at 48. Here, the case is at the pleading stage, and the TAC plausibly alleges that Defendants knowingly imposed and maintained a stigmatizing and restrictive classification on a pretrial detainee without any contemporaneous misconduct, adjudication, or procedural safeguards. At this stage, those well-pleaded facts must be accepted as true.

In sum, the TAC plausibly alleges that Defendants imposed a stigmatizing "sex offender" designation on a pretrial detainee, coupled with concrete and atypical deprivations, without notice, hearing, or meaningful review. That is sufficient to state a procedural due process claim, and Defendants' authorities—decided on different facts and procedural postures—do not warrant dismissal.

Here, based on the allegations, Defendants admit that it knowingly participated in punishing Mr. Johnson even though they knew that Policy 313 did not apply to him, and that he was found not guilty of the charges. (Complaint, Ex. A). Accordingly, not only are Defendants wrong, their Motion in this regard was not brought in good faith, and is contrary to law and the factual allegations contained in the Complaint.

**B. Substantive Due Process Under the Fourteenth Amendment**

For pretrial detainees like David Johnson, the Constitution draws a bright line: they may not be punished at all until and unless they are convicted of a crime. This principle comes from the Due Process Clause of the Fifth and Fourteenth Amendments. The Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), held that detaining a person to ensure their presence at trial is "a regulatory measure" and cannot be punitive. Any condition or restriction imposed on a pretrial detainee that amounts to "punishment" violates due process, because the detainee has not been adjudicated guilty. The *Bell* Court explained that a particular restriction is considered *punitive* (and thus unlawful) if (a) it is imposed with an intent to punish, or (b) it is not reasonably related to a legitimate, non-punitive governmental objective, or is excessive in relation to that objective. In simpler terms, jail policies affecting pretrial inmates must be justified by some valid administrative or security purpose; if they are arbitrary or overly harsh beyond what that purpose requires, the court will infer an intent to punish, making them unconstitutional.

Applying *Bell's test*: Using an old sex offense conviction as the sole basis to classify and severely restrict a *pretrial detainee* is highly suspect. What legitimate *non-punitive* goal would such a classification serve? The jail might argue it is for safety or prevention – for example, "this detainee might commit sexual misconduct while in custody, so we must identify and segregate him." In David Johnson's case, Cook County's Policy 313 was ostensibly created to deter *in-custody* sexual misconduct (like detainees exposing themselves or harassing staff). If applied properly, that policy would target detainees who commit sexual misconduct *during their current detention* and subject them to discipline (the green jumpsuit) after a due process finding of guilt. However, retroactively applying it to Johnson – who had no such incident in custody in 2021 – means converting his 2005 conviction into a present "Rule 313 violation." That appears to serve

no current institutional need; rather, it leverages an old offense to inflict new penalties. As alleged, Johnson's green jumpsuit "313 violator" status in 2021 did not correspond to any contemporary misconduct – it was purely a product of the *label* he carried from years before. According to his complaint, jail staff effectively admitted the policy was being applied retroactively: one official responded to Johnson's grievance that *"a 313 infraction prior to Nov. 2017 causes this individual to be in a green jumpsuit"*, thereby *"conceding retroactive application."* In substance, the jail treated his 2005 offense as if it were a new disciplinary infraction in 2021.

Under *Bell*, this is very likely unconstitutional. It looks punitive (essentially punishing him now for his past crime again) and not *reasonably related* to a legitimate aim. If the aim is to deter in-custody sexual misconduct, punishing someone who has not engaged in such conduct during this detention is not rationally tied to that aim. It becomes purely retributive or deterrent punishment based on past behavior – classic punitive intent. Moreover, the measure was *excessive*: Johnson was not only made to wear a stigmatizing uniform marking him as a sex offender, but he also endured a host of hardships (harassment from inmates and staff, reduced privileges, heavier shackling, etc.) while in green status. Imposing those deprivations on a pretrial detainee absent any new infraction is the definition of punishment without adjudication. The Seventh Circuit has observed that *"unlike convicted prisoners, pretrial detainees have a protected liberty interest in avoiding any nontrivial punishment"* before conviction. *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002). That principle means even lesser sanctions (disciplinary segregation, etc.) cannot be imposed punitively on detainees without some justification. In *Higgs v. Carver* (7th Cir. 2002), for example, the court held that *"A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002). If jail officials need to segregate a detainee

for non-punitive reasons – e.g. for the detainee's own protection or to manage a security risk – *"no process is required"* because it's not punishment. Id. But if the segregation or other harsh condition is effectively a disciplinary measure, it triggers due process protections (and, if not justified, violates *Bell* outright*) Id.* Simply put, pretrial detainees cannot be subjected to affirmative hardships or sanctions *just to punish past conduct*. The past conviction alone does not justify current punishment in the absence of a new legitimate need.

In David Johnson's scenario, the "green jumpsuit" was experienced as punitive: it publicly branded him, led to ridicule and even physical attacks by other inmates (who identified the green uniform with sex offenders). He was also denied normal privileges – according to the complaint, while in green he was shackled more harshly than others and denied access to programs, recreation, and certain visits. These are classic hallmarks of punitive treatment. Unless the jail could show a compelling non-punitive necessity (which seems unlikely here), applying Policy 313 to him retroactively would flunk the *Bell* test. In constitutional terms, it amounts to **"**punishment of a pretrial detainee", which violates substantive due process. Indeed, the complaint expressly alleges that this retroactive branding was **"**unconstitutional punishment" under *Bell,* and any court evaluating it would ask whether it was reasonably related to a legitimate goal or simply a punitive measure.

Defendant argues that there are two reasons that Plaintiff failed to allege a substantive due process claim: (1) Miller, Wilensky and Mueller's conduct did not deprive Mr. Johnson of a "fundamental right or liberty" and (2) Defendants' conduct does not arise to the level of "shocking the conscience." Both of these criticisms are pure fiction.

Defendants cite *Solomon v. Benson,* 563 F.2d 339 (7th Cir. 1977), for the basis that a "prisoner" has "no right to procedural due process, notwithstanding the adverse effects on his

eligibility for transfers, furloughs, and minimum-security programs." Defendants are incorrect. Being shackled to walls and chairs, being battered, denied food, and being isolated, as alleged in the Complaint, all constitute deprivation of liberty, and all were as a direct result of Defendants' conduct and refusal to abide by the not-guilty finding, and denial of any possibility of review. This is not the same as being denied a furlough.

Further, in *Solomon*, the Plaintiff was a *prisoner*. Mr. Johnson was a pretrial detainee, not a prisoner. He possessed the same rights as any citizen. He was not charged with any sexual misconduct, but was punished as if he was, and was not detained as a result of any sexual misconduct toward anyone. In contrast, in *Solomon*, the Plaintiff was convicted to two consecutive prison terms of ten years following two jury trial convictions. Mr. Johnson had no trials and no convictions that would require him to be labeled in a green jumpsuit. In *Solomon*, the Plaintiff was applying for parole, but was denied, allegedly because of a special offender classification, and as a result, he claimed he was deprived of a liberty or property interest. Citing *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274(1976) the court held that "a parolee *imprisoned for a crime* committed while on parole is not entitled to a due process hearing promptly on the issuance of a parole violator warrant and detainer." The court held "a *prisoner* has no statutory or constitutional entitlement in classification and rehabilitative programs sufficient to invoke due process." Unlike *Solomon* and *Moody,* Mr. Johnson was not a prisoner, and was not a parolee imprisoned for a crime committed while on parole." Further, he was not alleging entitlement to rehabilitative programs, transfers or furloughs or minimum-security programs, as in those cases. The cases Defendants cite as negating substantive and procedural due process are on their face inapplicable to this case.

Defendants' next argument is that wrongfully accusing a pretrial detainee who is not a prisoner, who was found not guilty of the reasons for being placed in a green jumpsuit, yet being

punished therefore, being shackled, being beaten, humiliated, denied food, denied committee, denied religion, and being placed in isolation, as alleged, somehow does not shock the conscience. It also shocks the conscience that the Defendants would apply a new policy retroactively to a punishment that was already served, and to do so without court order.

Defendants next claim that their violations for Mr. Johnson's constitutional rights are justified, because a decades old conviction labeled him as a registered "lifetime sex-offender". It is the "registration" part that is lifetime; not the "sex-offender" part. Defendants misread the Illinois SORA statute, which discusses points to the civil registration requirement as being lifetime. Further, Defendants point to no law that states that a sex-offender registrant is stripped of his constitutional rights. Illinois' Sex Offender Registration Act (SORA), 730 ILCS 150, section 7(c) does not use the phrase "lifetime sex-offender, but it does require some people to "register" for life. It does not invoke a separate constitutional status. It is about civic reporting obligations, not about jail discipline or custodial punishment. Registration does not strip anyone of constitutional rights, and Defendants point to no authority whatsoever that states that it does. While Defendants cites 730 ILCS 150 to argue that Johnson was a "lifetime sex offender," that label only governs registration duties (e.g., keeping address updated). It does not justify branding or punishing him during pretrial detention without due process, especially when Policy 313 did not exist at the time of his prior conviction. See *Smith v. Doe*, 538 U.S. 84 (2003), holding that sex-offender registration schemes are generally *nonpunitive civil regulations*, meaning that registry is analyzed as a civil regime.

### C. The TAC Properly States a Cause of Action for The Unconstitutional *Ex Post Facto* Implication of a Punitive Policy

Defendants claim that Plaintiff does not state a claim for the unconstitutional *ex post facto* application of Policy 313. It claims this is so because Policy 313 was not imposed for the purpose

of punishing him. However, the allegations in the Complaint allege the fact that they applied Policy 313 even *after* a not-guilty finding was made, leaves the only plausible purpose behind the application of the policy as to Mr. Johnson to be for punitive purposes.

The *Ex Post Facto Clause* (Art. I, §9, cl. 3 for Congress; §10 for states) flatly prohibits laws that impose *new or increased punishment* for acts committed before enactment. To violate the *Ex Post Facto* Clause, a law must be both retroactive and penal. *Vasquez v. Foxx,* 16-cv-8854 (7th Cir. 2018). In *Weaver v. Graham*, the Supreme Court explained that the Clause forbids any law "'imposing a punishment more severe than the punishment assigned by law when the act to be punished occurred'" (i.e. laws that make the punishment heavier after the fact). Thus, if a statute or regulation is deemed to *increase punishment* for a prior crime, it cannot be applied to persons whose offenses predate its enactment. In *Smith*, the Court applied the *intent-effects* test: if the legislature's intent was nonpunitive (civil), a plaintiff must show by "clearest proof" that the law's effects are so punitive as to negate that intent. See also *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), finding that Michigan's extensive sex offender registry restrictions *"impose punishment"* and cannot be applied retroactively.

In the present case, the law Defendants seek to impose is not a registration policy, but rather a punitive policy for a past conviction with time already served. They just use the registration law (and call it a "life-time sex offender" law") as an excuse to impose punitive policies such as Policy 313 *ex post facto*. A jail policy (like Cook County Jail's Policy 313) is not a statute, but if it operates to impose punitive consequences for past conduct, similar principles are implicated. For instance, if jail officials take a 2005 conviction and treat it as a basis to impose a *new disciplinary status* in 2021 – effectively converting an old crime into a current "infraction" under a policy adopted long after the conviction – a court could view that as **"**arbitrary and fundamentally unfair,"

violating due process. The Supreme Court has noted in other contexts that retroactivity *implicates fundamental fairness*. While the Ex Post Facto Clause is the specific bar on retroactive penal laws, courts sometimes invoke general due process to prevent unfair retroactive application of rules by the executive. In short, there is no U.S. law granting jails a blank check to impose new punitive measures on individuals solely due to old convictions. On the contrary, constitutional principles (Ex Post Facto and Due Process) prohibit making a prior sex offense the *sole trigger* for later punitive treatment, unless that later measure is clearly regulatory and nonpunitive in purpose and effect. *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).

Defendants' reliance on *Johnson v. Madigan*, 880 F.3d 371 (7th Cir. 2018) is misguided because that case concerned whether the registration requirement itself was punitive versus regulatory, not whether Policy 313 is punitive as applied to past conduct. It held that new burdens tied to *new conduct* are not "retroactive" punishment for the earlier crime. By contrast, if nothing new had occurred, as in this case, and the law simply reclassified an old offender to impose fresh penalties, that would *raise ex post facto* concerns.

In summary, no statute or court decision supports retroactively punishing an individual *solely* because they were once convicted of a sex offense, without additional current justification. Any law or policy that does so must be scrutinized: if it functions as a punitive measure for past conduct, it likely runs afoul of the *Ex Post Facto Clause* or basic due process fairness (if an executive policy). The Constitution's prohibition on retroactive punishment is a core protection, and sex offenders are not excluded from that protection. Courts permit retroactive application of laws *only* when those laws are truly regulatory (not intended to punish) and proportionate to legitimate preventive aims. *Smith v. Doe*, 538 U.S. 84 (2003).

**D. The TAC Properly Alleges a Claim for Cruel and Unusual Punishment**

Defendants claim that the Complaint does not state a claim for unconstitutional cruel and unusual punishment. The basis is that the complaint does not allege personal involvement by the Defendants. Again, they are wrong. An official is personally responsible if he knows of and facilitates, condones, or turns a blind eye to an ongoing violation he can stop. *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). The TAC alleges: Mitchell enforced the green-suit designation at intake (TAC ¶¶32–37); Wilensky denied grievances with the retroactive rationale and maintained green status (TAC ¶¶44–47, 87–90); and Mueller had supervisory authority over classification, told Johnson grievance procedures did not apply, and upheld the status (TAC ¶¶16, 51, 103). Defendants next claim that they don't have to accept the allegations in the complaint as true because they are contradicted by the fact that the plaintiff is a lifetime sex-offender registrant. They cite no law that states that a past record is the functional equivalent of a future crime that has not been committed.

**E. Plaintiff Properly States a Monell Claim**

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality or official-capacity defendant can be liable under §1983 only if the constitutional violation was caused by a policy, custom, or practice of the entity, or by a *failure to train* amounting to deliberate indifference. The TAC expressly pleads that Sheriff Dart (as the jail's policymaker) and Cook County maintained policies or customs that led to Johnson's injuries:

- In the Due Process count, the TAC alleges that the violations were caused by Sheriff Dart's and Cook County's policies, practices, and failures in training/supervision regarding Policy 313's accurate and non-retroactive application. Specifically, Johnson claims there was no requirement or training for staff to confirm that a detainee had actually been adjudicated guilty under Rule 313 before imposing the green jumpsuit, and that this oversight reflects a policy or custom of applying the policy without proper procedural checks. If true, this is essentially a systemic lapse attributable to the municipality – not a random mistake by a rogue guard. The TAC thereby links the due process violation to an

official failure (in policy design or training) rather than solely individual error.

- In the Cruel and Unusual Punishment count, the TAC asserts that the "policy choice to publicly mark detainees" with green jumpsuits, combined with a lack of safeguards, made the cruel treatment foreseeable. It also alleges a "custom of maintaining green status without adjudication", indicating that what happened to Johnson was a product of a broader practice (or at least a tolerated pattern) at the jail. This is a direct Monell allegation: if the jail leadership knowingly implemented or allowed a practice of keeping detainees in the sex-offender uniform without a valid finding, that practice can be attributed to the County/Sheriff's Office. Moreover, by highlighting the foreseeability of harm from the policy itself, the TAC implies that the policy was deliberately indifferent to inmates' safety, a further Monell theory (i.e., the policy was unconstitutional as written or as implemented).

- In the Equal Protection count, the TAC similarly alleges that Sheriff Dart and Cook County maintained "a policy or custom that irrationally classified detainees based on pre-policy or unadjudicated allegations," or alternatively, failed to train and supervise staff to prevent such misuse. In other words, the unequal treatment Johnson faced was not merely a fluke; it stemmed from an institutional practice of using old or unproven allegations to classify detainees under Policy 313. If proven, that could establish municipal liability for the equal protection violation as well.

These allegations show that if true, the Defendants were "deliberately indifferent as to the known or obvious consequence." *Gable v. City of Chicago,* 296 F.3d 531 (7th Cir. 2002). In Mr. Johnson's case, the Defendants were the moving forces behind the consequences, and when the consequences occurred, they deliberately turned a blind eye, as conceded in Defendants' brief. Defendant's argument on page 12 of its brief that Plaintiff cannot plausibly claim that Defendants ignored a "not guilty" finding for a sex offense due solely to the fact that he is a SORA registrant, is unsupported rubbish.

**F. Defendants Are Not Shielded by Qualified Immunity**

Defendants claim that their conduct entitles them to qualified immunity. It does not. The proper inquiry is "whether the right at issue was clearly established at the time and under the circumstances presented. *Bianchi v. McQueen* 818 F.3d 309 (7th Cir. 2016). The inquiry is whether (1) the alleged facts state a violation of a constitutional right, and (2) whether that right was clearly established at the time. *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013).

Defendants claim that the plaintiff bears the burden of showing that it was clearly established that the conduct in question met the conscience-shocking standard. *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). That has been properly pleaded in this case. It has long been clearly established that pretrial detainees cannot be punished absent a legitimate, non-excessive purpose (*Bell*), that stigmatizing custodial classifications plus atypical restraints require due process (*Vitek; Dupuy*), and that officials may not maintain conditions exposing detainees to substantial risk of assault (*Miranda*). Given those principles and TAC's allegations, qualified immunity cannot be resolved on the pleadings.

The Defendants argue "Defendants could not have believed that their conduct was so patently unconstitutional when they were simply complying with a court order. (17-cv-8085, Dkt. 45 ¶¶ 5– 6.)". Its interpretation of what the Court ordered presupposes a rational application to the plaintiff. Analogously, Defendants then concede that if they were not complying with a court order, then they should have believed that their conduct was unconstitutional. Here, the Complaint alleges facts that show that Defendants consciously ignored a not guilty finding, ignored videotaped evidence, ignored written documentation of innocence, as alleged, and did not even review their own records, and were not trained to review their own records. Looking at this case in a light most favorable to Mr. Johnson, these facts are more than sufficient to show that Defendants should have believed that their conduct was unconstitutional when they decided to shackle a non-prisoner pretrial detainee, subjecting him to certain assault, certain beatings, food deprivation, sleep deprivation, religious deprivation, and themselves ridiculing and humiliating him.

Defendants next argue that Plaintiff "does not allege that the policies or practices described in his TAC were designed to cause harm or that they obviously posed a substantial risk of

constitutional injury." (Def Brief, p. 12). Plaintiff's TAC indeed does allege that the practices were designed to cause him harm, and he goes into painful detail in his complaint how they caused him not just substantial risk of constitutional injury, but actual injury. ¶¶44, 46, 48, 49, 50, 51, 52, 54, 55, 56, 57,58, 60, 61, 62, 63, 64, 65, 66, 67, 70, 71, 72, 77, 79, 82, 83, 91, 103, 107, and throughout the Complaint.

**G. Alternative request for leave to amend (Cook County party-identity issue).**

Plaintiff sued the Sheriff in his official capacity, and an official capacity suit is another way of pleading an action against an entity of which the officer is an agent. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). If the Court concludes Cook County is not a proper *Monell* defendant because the Sheriff is a separate suable entity, Plaintiff respectfully requests leave to amend solely to substitute or clarify the proper municipal party while preserving the same policy and official-capacity claims. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).

## II. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. In the alternative, Plaintiff requests limited leave to amend to conform the captioned municipal defendant if necessary.

Respectfully submitted,

By: */s/ Steven E. Garstki*
Attorney for Plaintiff

Steven Garstki (Atty. ARDC 6201165)
STOLLER & GARSTKI
sgarstki@sgpersonalinjury.com
111 N. Wabash Ave., Suite 2118
Chicago, IL 60602 // Phone: 312-263-4443

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Steven E. Garstki*
Steven E. Garstki