**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-06263 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| TOM DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Johnson claims that, while he was a pretrial detainee in the custody of the Cook County Department of Corrections ("CCDOC"), he was required to wear a distinctive green jumpsuit identifying him as a detainee who had committed sexual misconduct. While Johnson had an earlier conviction for criminal sexual assault, he claims that the green jumpsuits were only for detainees who committed sexual misconduct while in custody. Despite informing CCDOC staff of the alleged error in his uniform assignment, Johnson was required to continue wearing the green jumpsuit, which led to him being harassed by other inmates. Because he alleges that Defendants' refusal to correct his uniform assignment violated his constitutional rights, Johnson brought the present lawsuit asserting claims pursuant to 42 U.S.C. § 1983 against Tom Dart, in his official capacity as Cook County Sheriff; three CCDOC employees in their individual capacities, Defendants Steven Wilensky, Officer Mitchell, and John Mueller; and Cook County. Now before the Court is Defendants' motion to dismiss Johnson's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 67.) For the reasons that follow, Defendants' motion is granted.

**BACKGROUND**

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded factual allegations in the TAC as true and draws all reasonable inferences from those facts in Johnson's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The TAC alleges as follows.

In October 2016, the Cook County Sheriff instituted Policy 313, under which detainees found to have committed sexual misconduct offenses were required to wear green jumpsuits that distinguished them from other inmates and were subject to other forms of differential treatment. (TAC ¶¶ 18–19, Dkt. No. 65.) The purpose of Policy 313 was to address instances of indecent exposure and other forms of sexual misconduct and to protect CCDOC staff and other detainees. (*Id.* ¶¶ 18, 20.) Policy 313 was later modified in response to a preliminary injunction entered in *Brown v. Cook County*, No. 17-cv-08085 (N.D. Ill. Nov. 28, 2017), Dkt. No. 45, which required, among other things, that the green jumpsuit be assigned upon the first report of an incident while administrative adjudication was pending. (TAC ¶ 22.) That preliminary injunction was entered in litigation brought by female employees of the Law Office of the Cook County Public Defender who alleged that they witnessed male CCDOC detainees exposing themselves or masturbating, or were otherwise sexually harassed by CCDOC detainees. *Brown v. Cook County*, No. 17 C 8085, 2018 WL 3122174, at *1–2 (N.D. Ill. June 26, 2018). Similar lawsuits were also brought by female CCDOC or courthouse employees alleging harassment by male CCDOC detainees. (*Id.* at *1.)

On November 1, 2005, David Johnson was sentenced to a six-year term of imprisonment after pleading guilty to one count of criminal sexual assault. (TAC ¶ 25.) As a result of that conviction, Johnson is a lifetime registrant on Illinois's sex offender registry. (Defs.' Mot. to

Dismiss, Ex. A, Dkt. No. 67-1.)[1] In addition, during another period of detention preceding the detention at issue here, Johnson was charged with an indecent exposure infraction but was found not guilty of that infraction shortly thereafter. (TAC ¶¶ 27–28.) A criminal charge stemming from that incident was ultimately dismissed by an order of *nolle prosequi*. (*Id.* ¶ 29.)

In late 2021, Johnson was arrested on new charges not involving any form of sexual misconduct. (*Id.* ¶ 31.) When he came back into CCDOC custody on November 12, 2021, Johnson was assigned a green jumpsuit. (*Id.* ¶ 32.) When Johnson asked why he was required to wear the green jumpsuit, CCDOC personnel informed him that he had been classified as a Policy 313 violator. (*Id.*) Johnson protested the designation to Defendant Officer Mitchell,[2] but Mitchell maintained that the system's Policy 313 alert was not subject to review. (*Id.* ¶ 34.) Initially, Johnson refused to put on the green jumpsuit, but he relented when correctional officers threatened him with OC spray (*i.e.*, pepper spray) and placement in administrative segregation. (*Id.* ¶¶ 35–37.) The green jumpsuit visibly distinguished Johnson from other detainees who had not been accused or found guilty of sexual misconduct. (*Id.* ¶ 38.) And other detainees and CCDOC staff understood that the green jumpsuit signified that the wearer was a sex offender. (*Id.* ¶ 39.)

Because he had never been guilty of sexual misconduct while in custody, Johnson filed a grievance on December 27, 2021, requesting that he be assigned a standard uniform. (*Id.* ¶ 42.) Three days later, Defendant Steven Wilensky advised Johnson that his assignment of the green jumpsuit was due to his previous Policy 313 infraction. (*Id.* ¶ 44.) Despite the administrative and

---

[1] The Court may take judicial notice of Johnson's registration on Illinois's Sex Offender Registry. *Beley v. City of Chicago*, No. 12 C 9714, 2015 WL 684519, at *2 n.1 (N.D. Ill. Feb. 17, 2015).

[2] Johnson does not know Officer Mitchell's first name. (TAC ¶ 15.)

criminal adjudications finding Johnson not guilty of the prior in-custody indecent exposure allegation, Johnson's grievance was rejected. (*Id.* ¶¶ 44–47.) Johnson went on to file multiple additional grievances regarding his green jumpsuit. (*Id.* ¶¶ 48–50.) Those grievances were all unsuccessful, with Defendant John Mueller telling Johnson that the grievance procedure did not apply to his status. (*Id.* ¶ 51.) Johnson claims that, as a result of being visually identified as a sex offender to other CCDOC inmates and staff, he was subjected to serious physical and verbal abuse. (*Id.* ¶¶ 54–57, 62–65.) In addition, because of his designation as a Policy 313 violator, Johnson was shackled or chained during his movements and was deprived of recreational, rehabilitative, and religious programming. (*Id.* ¶¶ 58–61, 66.)

According to Johnson, Defendants violated his constitutional rights by requiring him to wear a green jumpsuit identifying him as a sex offender, even though he had never been found guilty of committing sexual misconduct while in custody and his sentence for his prior criminal sexual assault conviction had been fully discharged. Thus, in the TAC, Johnson asserts claims under § 1983 alleging that Defendants violated his Fourteenth Amendment due process rights by imposing additional restrictions and punishment on him without a hearing or meaningful review and violated his right to equal protection under the law by treating him differently than other non-sex offenders without any basis for doing so.

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants contend that each of Johnson's constitutional claims fail because the TAC does not adequately allege the personal involvement necessary to hold Wilensky, Mitchell, and Mueller liable for the alleged constitutional violations. *E.g.*, *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." (internal quotation marks omitted)). Nor does the TAC plead that the purported constitutional harm was caused by an official policy, custom, or practice as necessary to hold Dart liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), according to Defendants. But the Court need not address any individual Defendant's liability or Dart's liability under *Monell* because Johnson fails to plausibly plead a violation of his constitutional rights.

While the TAC is somewhat evasive on this point, Johnson appears to concede that his green jumpsuit assignment was based, at least in part, on the fact of his prior criminal sexual assault conviction. (TAC ¶ 6 ("This lawsuit challenges the retroactive and procedurally deficient application of Policy 313 to [Johnson] in 2021 based solely on his pre-policy conviction and a cleared 2017 allegation.").) Defendants contend that the prior conviction, along with his resulting lifetime status as a sex offender, fully justified the CCDOC's conduct in assigning Johnson a green jumpsuit. However, Johnson claims that Policy 313 applied only to inmates who committed a sex offense while in custody. But even accepting as true that Policy 313's terms addressed only sexual misconduct while in custody, a jail official's misinterpretation or misapplication of a jail rule does not, by itself, constitute a constitutional violation. *See Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004) ("[T]he mere fact that state rules or statutes are

violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim."). The relevant question is whether Defendants violated Johnson's constitutional rights by requiring him to wear a green jumpsuit on account of his prior conviction for a sex offense committed when he was not in custody.

Having framed the inquiry, the Court turns to address Johnson's due process claims.[3] Unlike prisoners, pretrial detainees like Johnson "cannot be punished at all" and therefore "'are protected from certain abusive conditions' by the Fourteenth Amendment's Due Process Clause." *Pittman ex rel. Hamilton v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). Nonetheless, a pretrial detainee may be properly subject "to the restrictions and conditions of the detention facility as long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536–37. Put another way, "[t]he government may take measures that are reasonably calculated to effectuate the pretrial detention." *Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999). Thus, the Supreme Court "has recognized a distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may." *Bell*, 441 U.S. at 537.

To determine "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word," a court must consider "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. Generally, "if a particular condition

[3] The TAC includes a separate count alleging that Defendants violated Johnson's Eighth Amendment rights by forcing him to wear the green jumpsuit. As a pretrial detainee, however, Johnson's challenge to the conditions of his confinement arise under the Fourteenth Amendment's due process clause rather than the Eighth Amendment. *Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019). Thus, the Court construes Johnson's challenge to the conditions of his confinement as part of his due process claims.

or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. And the Supreme Court has recognized that "the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* at 540.

Here, the TAC on its face acknowledges that Policy 313 and its green jumpsuit requirement are directly tied to the CCDOC's legitimate interests in effectively managing the facility. In particular, Policy 313 was implemented "to address indecent exposure and similar sexual misconduct in jail," and its "stated aim was to deter in-jail sexual misconduct and protect staff and detainees." (TAC ¶¶ 18, 20.) The problem of inmates indecently exposing themselves to or masturbating in front of female jail staff and public defenders led to multiple lawsuits against the Cook County Sheriff's Office. *Brown*, 2018 WL 3122174, at *1. And the district court under which those actions were consolidated entered a preliminary injunction ordering "[a]ll detainees with a reported incident of indecent exposure, masturbation, or sexual misconduct . . . be provided with and required to wear a jumpsuit designed to thwart indecent exposure and masturbation." Prelim. Inj. ¶ 5, *Brown*, No. 17-cv-08085 (Nov. 28, 2017).[4] There is little doubt then that the green jumpsuit is not a punitive measure but instead a nonpunitive regulatory restriction directed at preventing sexual harassment of staff, visitors, and other detainees.

[4] The Court deems the preliminary injunction order in *Brown* to be incorporated by reference into the TAC, which explicitly references the order and, as it relates to the green jumpsuit policy, the order is central to Johnson's claims. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Notably, Johnson does not contend that either Policy 313 or the green jumpsuit requirement is facially unconstitutional. Rather, he claims only that assigning him to wear a green jumpsuit based on his out-of-custody criminal sexual assault conviction was excessive in light of the purpose Policy 313 was meant to serve. While a nonpunitive restriction can be deemed excessive in relation to the legitimate purpose it is meant to address, a court must be mindful that corrections officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 538, 547.

Essentially, Johnson objects to Defendants grouping together detainees like himself, whose only sex offenses occurred out of custody, with detainees who have a record of prior in-custody sex offenses. However, the distinction Johnson tries to draw between in-custody and out-of-custody sex offenses is so fine that the Court must defer to the CCDOC's judgment that Johnson, as a lifetime registered sex offender, presented the risk of sexual misconduct that the green jumpsuit requirement was meant to address. Indeed, as a registered sex offender, Johnson has been deemed one whose risk of recidivism threatens public safety. *See, e.g.*, *Braam v. Carr*, 37 F.4th 1269, 1274 (7th Cir. 2022) ("[L]ifetime monitoring advances [the state's] strong interest in protecting the public from recidivism by sex offenders."); *see also Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 ("[W]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." (internal quotation marks omitted)). Accordingly, the CCDOC could reasonably decide that reducing in-custody sexual misconduct required that it act proactively and not only reactively. Thus, the Court defers to its decision to not wait and see if a registered-sex-offender detainee will reoffend in custody and instead assign Johnson with a green jumpsuit upon intake.

The Court's conclusion that assigning Johnson a green jumpsuit based on his prior sex-offense conviction was in service of and proportionate to the CCDOC's legitimate interests in order and security at the jail forecloses most of Johnson's potential theories of a due process violation. *E.g.*, *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) ("[C]onditions of confinement which are reasonably related to a legitimate and non-punitive government goal, are not unconstitutional . . . ." (internal quotation marks omitted)). To the extent the green jumpsuit and the attendant restrictions on his movement in the CCDOC amounted to a deprivation of Johnson's liberty, he still fails to plead that the deprivation was effected without due process. Johnson was assigned the green uniform because he had already been convicted of a sex crime and, on that basis, had the status of a lifetime sex offender. Given that previous conviction, Johnson "received a 'procedurally safeguarded' opportunity to contest the charges against [him] through the criminal justice system" and "no further process was required." *Murphy v. Rychlowski*, 868 F.3d 561, 566 (7th Cir. 2017). That also explains why Johnson was not entitled to the process Policy 313 provided for detainees who committed sexual misconduct while in custody. (TAC ¶ 21.) Whereas Johnson's sexual misconduct was proved by the fact of his prior conviction, pretrial detainees accused of sexual misconduct in custody are entitled to process before they can be punished or otherwise deprived of liberty for their in-custody offense. *See Rapier*, 172 F.3d at 1005 ("[A]lthough it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection.").[5]

[5] Notably, even though pretrial detainees cannot be punished for alleged sexual misconduct without process, the *Brown* preliminary injunction expressly states that the green "jumpsuit will be promptly provided, and its use required, upon the first report of the behavior . . . without awaiting an inmate disciplinary hearing or adjudication." Prelim. Inj. ¶ 5, *Brown*, 17-cv-08085 (Nov. 28, 2017). That indicates that the district court in *Brown* also understood the green jumpsuit requirement to serve a

Finally, the Court considers Johnson's equal protection claim, in light of its finding that requiring Johnson to wear a green jumpsuit was in service of the CCDOC's non-punitive and substantial interest in deterring sexual misconduct among detainees. Since Johnson's claim is not based on a suspect classification, to state an equal protection claim he "must allege that [he] was singled out arbitrarily, without rational basis, for unfair treatment." *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1076 (N.D. Ill. 2013). The TAC's assertion that Johnson was treated differently from similarly situated non-sex offenders cannot be maintained since Johnson was himself a registered sex offender. As such, Defendants treated him the same as other sex offenders under Policy 313.[6] Even crediting Johnson's distinction between himself and in-custody sex offenders, Johnson's prior conviction for criminal sexual assault supplied Defendants with a rational basis for treating him differently from those detainees who had never been found guilty of sexual misconduct in any setting. As discussed above, the law regards individuals who have committed a previous sex offense to be more likely to recidivate. And there is no reason to think that risk of recidivism is meaningfully different based on the custodial or non-custodial location of the prior offense. Thus, Defendants had a rational basis for treating Johnson the same as those detainees whose sexual misconduct occurred in custody.

For all the reasons discussed above, Johnson fails to plead any violation of his Fourteenth Amendment rights. The TAC is therefore dismissed. This is the second time that Johnson's

---

purpose distinct from whatever discipline might be imposed if in-custody sexual misconduct is ultimately proved.

[6] The TAC does not allege or otherwise suggest that other detainees with a similar record as Johnson—a conviction for an out-of-custody sex offense and no finding of in-custody sexual misconduct—were not also subject to the green jumpsuit requirement under Policy 313.

complaint has been dismissed for failure to state a claim. Consequently, the Court now dismisses the TAC with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the TAC (Dkt. No. 67) is granted. The TAC is dismissed with prejudice. The Clerk will enter judgment in favor of Defendants.

ENTERED:

Dated: September 30, 2026

Andrea R. Wood
United States District Judge